**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| TEXTRON INC., TEXTRON INNOVATIONS, INC., and TEXTRON E-Z-GO LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LEGACY EV LLC D/B/A EZ KRUISER,<br><br>Defendant. | Case No. 2:26-cv-04487-DCN |

**COMPLAINT**

**COME NOW** Plaintiffs Textron Inc. ("Textron Inc."), Textron Innovations Inc. ("TII"), and Textron E-Z-GO LLC ("E-Z-GO") (collectively "Textron" or "Plaintiffs"), by and through their undersigned counsel, and in support of this Complaint against Defendant Legacy EV LLC d/b/a EZ KRUISER ("Defendant"), do hereby allege and aver as follows:

**NATURE OF THE ACTION**

1. This is an action seeking permanent injunctive relief and damages for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false designation and unfair competition in violation of Lanham Act, 15 U.S.C. § 1125(a); (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) dilution by blurring under the Lanham Act, 15 U.S.C. § 1125(c); (5) common law trademark infringement, and (6) unfair trade practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*, arising from Defendant's unlaw conduct in knowingly and willfully adopting and using false statements and a trademark incorporating the dominant portion of Textron's registered trademarks in connection

with the same goods, specifically, golf cars, low-speed vehicles ("LSVs"), personal transportation vehicles ("PTVs"), utility task vehicles ("UTVs"), parts, and related services, including displaying the infringing mark at a trade show in South Carolina and through its dealerships in South Carolina.

| **TEXTRON MARKS:** | **INFRINGING MARK:** |
| --- | --- |
| E-Z-GO<br><br>**Reg. No. 1,299,452**<br>**Registered Oct. 9, 1984** | EZ EZ Kruiser |
| EZGO<br><br>**Reg. No. 2,706,193**<br>**Registered Apr. 15, 2003** | EZ Kruiser |






**PARTIES**

2. Plaintiff Textron Inc. ("Textron Inc.") is a corporation duly organized and validly existing under the laws of Delaware with its principal place of business located at 40 Westminster Street, Providence, Rhode Island 02903.

3. Plaintiff Textron Innovations Inc. ("TII") is a corporation duly organized and validly existing under the laws of Delaware with its principal place of business located at 40 Westminster Street, Providence, Rhode Island 02903. TII is the intellectual property holding company and wholly-owned subsidiary of Textron Inc. TII owns the E-Z-GO Marks, defined below, and the federal registrations for them. TII licenses the E-Z-GO Marks to its affiliate E-Z-GO, and controls the nature and quality of the goods and services offered under them.

4. Plaintiff TEXTRON E-Z-GO LLC ("E-Z-GO") is a Delaware limited liability company with its principal place of business located at 1451 Marvin Griffin Road, Augusta, GA 30906. E-Z-GO is a wholly-owned subsidiary of Textron Inc. Under license from TII, E-Z-GO manufactures, markets, distributes, sells, and services golf cars, LSVs, UTVs, PTVs, and related parts and goods under the E-Z-GO Marks throughout the United States, including in South Carolina.

5. Upon information and belief, Defendant Legacy EV LLC d/b/a EZ Kruiser is a Mississippi limited liability company, formed on February 11, 2025, with its principal place of business located at 1308 S. Haugh Avenue, Picayune, Mississippi 39466.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) because it arises under the Lanham Act, 15 U.S.C. § 1121(a), et seq.

7. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8. This Court has personal jurisdiction over Plaintiffs in that they are a corporation and subsidiaries conducting business in this state and in this district and division. Specifically, as South Carolina is known for being a premier golf destination state, Plaintiffs sell their golf cars, LSVs, PTVs, UTVs, parts, and related services through a series of dealers in South Carolina. E-Z-GO has ten dealers in South Carolina and nearly 200 South Carolina golf courses running E-Z-GO fleets.

9. This Court has personal jurisdiction over Defendant because Defendant has purposefully directed its activities at consumers and dealers in this District and has marketed, distributed, and offered for sale infringing goods in this District, including by being physically present and promoting its goods at the Golf Carting Expo & Dealer Summit held at the North Charleston Convention Center, 5001 Coliseum Drive, North Charleston, South Carolina 29418 on October 1-3, 2026 ("Golf Carting Expo"). Defendant's infringing activities have caused and are likely to continue to cause injury to Plaintiffs in this state and district. Defendant also directs its infringing goods into this District through at least one South Carolina dealer identified on its website: Palmetto Leisure, 5900 Rivers Ave. D-3, North Charleston, SC 29406.




10. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1391(c)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Defendant's display and promotion of its marks at the Golf Carting Expo.

## STATEMENT OF FACTS

### A. E-Z-GO History and E-Z-GO Trademark Rights

11. E-Z-GO is among the most recognized and trusted source of golf cars, LSVs, UTVs, and PTVs in the United States.

12. E-Z-GO's long and storied history began in 1954, founded by the Dolan brothers in a one-room shop in Augusta, Georgia, with the goal of manufacturing higher-quality golf cars. Since that time, E-Z-GO has been in the business of engineering, designing, manufacturing, assembling, selling, and distributing golf cars, LSVs, UTVs, and PTVs as well as parts therefore.

13. In 1960, E-Z-GO became part of Textron Inc., a global multi-industry conglomerate headquartered in Providence, Rhode Island, known for its powerful brands, including E-Z-GO, Cessna, Beechcraft, Hawker, Bell Helicopter, Jacobsen, and Kautex, among others.

14. Over the past 65 plus years under Textron Inc., E-Z-GO has become a leading global manufacturer of golf cars, LSVs, UTVs, and PTVs.

15. From its large-scale production facility in Augusta, Georgia, E-Z-GO builds tens of thousands of vehicles each year, many of which feature game-changing technology and innovations to improve vehicle efficiency and enhance the user experience.

16. E-Z-GO and its predecessors have continuously used the marks E-Z-GO and EZGO in interstate commerce in connection with golf cars, LSVs, UTVs, PTVs, and related goods and services, since 1954.

17. Based on their extensive, exclusive, source-identifying, and continuous use, Plaintiff TII own the valid and subsisting federal trademark registrations identified in the subsequent paragraphs (collectively, the “E-Z-GO Marks”). These registrations are prima facie evidence of the validity of the marks, TII’s ownership of them, and TII’s exclusive right to use the marks in commerce.

18. Plaintiff TII owns an incontestable federal U.S. trademark registration for the mark E-Z-GO for use in connection with “electric cars used as plant personnel carriers, baggage carriers, general utility and maintenance cars, motel and resort cars, golf cars and structural parts therefor” in International Class 12, which was filed on September 26, 1983, and first used in commerce in September 1954. The trademark was registered on the Principal Register of the United States Patent and Trademark Office (“Trademark Office”) on October 9, 1984, as U.S. Registration No. 1,299,452. The registration has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A copy of the registration is attached hereto as Exhibit 1. The Notice of Acknowledgement Under Section 15 is attached hereto as Exhibit 2.

19. Plaintiff TII also owns an incontestable federal U.S. trademark registration for the mark EZGO for use in connection with "electric cars used as plant personnel carriers, baggage carriers, general utility and maintenance cars, motel and resort cars, golf cars and structural parts therefor" in International Class 12, which was filed on April 19, 2001, and first used in commerce in September 1954. The trademark was registered on the Principal Register of the Trademark Office on April 15, 2003, as U.S. Registration No. 2,706,193. The registration has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A copy of the registration is attached hereto as Exhibit 3. The Notice of Acknowledgement Under Section 15 is attached hereto as Exhibit 4.

20. Plaintiff TII also owns an incontestable federal U.S. trademark registration for the design mark for use in connection with, inter alia, "gasoline and electric-powered vehicles used as plant personnel carriers, general utility and maintenance cars, motel and resort cars, baggage carriers, golf cars, turf maintenance vehicles, electric-powered and remote-controlled golf trolleys and structural parts therefor" in International Class 12, which was filed on May 20, 2008, and first used in commerce on August 31, 2005. The trademark was registered on the Principal Register of the Trademark Office on April 14, 2009, as U.S. Registration No. 3,605,315. The registration has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A copy of the registration is attached hereto as Exhibit 5. The Notice of Acknowledgement Under Section 15 is attached hereto as Exhibit 6.

21. Plaintiff TII also owns an incontestable federal U.S. trademark registration for the mark E-Z-GO EXPRESS for use in connection with "on-road and off-road gasoline and electric-powered utility land vehicles used as plant personnel carriers, general utility and maintenance cars, motel and resort cars, baggage carriers, golf cars, turf maintenance vehicles, trail vehicles, all-

terrain vehicles, and structural parts therefor" in International Class 12, which was filed on September 11, 2014, and first used in commerce on September 30, 2011. The trademark was registered on the Principal Register of the Trademark Office on August 25, 2015, as U.S. Registration No. 4,798,279. The registration has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A copy of the registration is attached hereto as Exhibit 7. The Notice of Acknowledgement Under Section 15 is attached hereto as Exhibit 8.

22. TII licenses the E-Z-GO Marks to E-Z-GO on an exclusive basis. Under that license, TII sets and enforces quality standards for all goods and services offered under the E-Z-GO Marks. E-Z-GO's use of the E-Z-GO Marks inures to TII's benefit. E-Z-GO sells E-Z-GO-branded goods and services directly and through its authorized dealer network, and it earns the revenue and goodwill associated with the E-Z-GO Marks.

23. E-Z-GO has extensively promoted and advertised its products using the E-Z-GO Marks throughout the United States and internationally through a comprehensive, multi-channel marketing strategy.

24. E-Z-GO regularly advertises using the E-Z-GO Marks in leading industry publications, including PGA Magazine, Club Management Association of America ("CMAA") publications, and General Managers Monthly, and has maintained a continuous print advertising presence.

25. 24. E-Z-GO also promotes its products and the E-Z-GO Marks through prominent industry trade shows and events, including the PGA Show, CMAA events as a Strategic Partner, GCSAA conferences, and the Golf Carting Expo, where E-Z-GO markets its products under the E-Z-GO Marks directly to golf, hospitality, and recreational vehicle customers.

26. Between 2022 and 2026, E-Z-GO's websites attracted more than 8.4 million users, exposing millions of consumers and commercial purchasers to the E-Z-GO Marks in connection with E-Z-GO's goods and services.

27. E-Z-GO's social media presence generates substantial consumer engagement and visibility. From 2022 through 2026, E-Z-GO's social media profiles generated more than 435 million impressions, while E-Z-GO's social media content generated more than 8.9 million additional post impressions, reinforcing widespread consumer recognition of the E-Z-GO Marks.

28. E-Z-GO also invests heavily in digital advertising. Between 2022 and 2026, E-Z-GO advertisements using the E-Z-GO Marks were displayed more than 1.07 billion times, reaching consumers across numerous online platforms and markets.

29. In 2025 alone, E-Z-GO's websites attracted approximately 1.6 million users, its social media profiles generated more than 120 million impressions, its social media content generated approximately 2.7 million impressions, and its digital advertisements generated more than 198 million impressions.

30. In 2024 alone, E-Z-GO's marketing efforts generated approximately 107 million social media profile impressions, nearly 2 million website users, and almost 194 million digital advertising impressions of the E-Z-GO Marks.

31. E-Z-GO maintains an active YouTube presence that further promotes its products and the E-Z-GO Marks. Since 2009, E-Z-GO's YouTube content has generated approximately 16.9 million views, more than 97,500 hours of watch time, and has reached a monthly audience of approximately 18,400 viewers.

32. E-Z-GO also conducts ongoing direct marketing and customer engagement campaigns using the E-Z-GO Marks. Since 2020, E-Z-GO has transmitted more than 256,000

marketing and lead-nurture emails to prospective customers and subscribers, maintaining regular contact with a mailing list of approximately 37,000 subscribers.

33. Through these extensive and longstanding advertising, promotional, digital marketing, trade show, and customer engagement activities, E-Z-GO has developed substantial goodwill in its trademarks and has achieved widespread recognition among consumers, dealers, distributors, golf course operators, and commercial fleet purchasers throughout the United States.

34. E-Z-GO averages over a billion dollars in annual sales of golf cars and golf car-related products.

**B. Defendant and Its Infringing and Unlawful Conduct**

35. Upon information and belief, years after Plaintiffs' E-Z-GO Marks were registered, Defendant adopted and began using EZ KRUISER (the "Infringing Mark") in connection with the manufacture, marketing, promotion, distribution, offering for sale, and sale of golf cars, LSVs, and PTVs.

36. Defendant uses the Infringing Mark prominently on its vehicles, on its website at www.ezkruiser.com, on social media, in dealer marketing materials, at the Golf Carting Expo trade show, and in similar advertising and sales materials.

37. On or about October 1 through 3, 2026, Defendant exhibited and promoted electric golf cars prominently bearing the Infringing Mark at the Golf Carting Expo, directly adjacent to Textron's booth, which displayed Textron's E-Z-GO golf cars and related products.

38. Textron first learned of Defendant's Infringing Mark when its personnel observed carts displayed by Defendant at the Golf Carting Expo on or about October 1, 2026, prominently displaying and emphasizing the "EZ" portion of the Infringing Mark on a golf cart:




39. Defendant's booth at the Golf Carting Expo was situated directly next to E-Z-GO's booth, further compounding confusion among consumers.




40. At the Golf Carting Expo between October 1-3, 2026, Textron sales team members heard from dealers, industry members, and general consumers ("Confused Consumers") that were confused by Defendant's use of "EZ Kruiser" or mistakenly believe that there was a connection between Defendant/Defendant's products and E-Z-GO because of Defendant's use of the Infringing Mark. Confused Consumers asked how Defendant was related to E-Z-GO, asked if Defendant was a sub-brand of E-Z-GO, and even stated, "The way they put you next to each other, we assumed you were the same company."

41. When E-Z-GO personnel spoke with Defendant's owner and founder Dennis Lee at the Golf Carting Expo on or about October 1, 2026, Mr. Lee stated that Defendant intentionally selected the Infringing Mark to populate in web searches when consumers are searching for Textron's E-Z-GO products.

42. Defendant's deliberate adoption of "EZ", the dominant, distinctive portion of Plaintiffs' famous E-Z-GO Marks, for identical goods sold through overlapping channels of trade

has and will continue to cause a likelihood of confusion among consumers, dilute Plaintiffs' famous marks, and irreparably injure Plaintiffs' goodwill.

43. Defendant's Infringing Mark is used and promoted by authorized and independent dealers.

44. For example, Golf Cart World, a dealer located in Louisiana, advertises a "2027 EZ-Kruiser Vyper F-4F – Gray / Fiber Flash" electric golf cart for $13,995.00, using the hyphenated form "EZ-Kruiser," which is even closer in appearance to "E-Z-GO", thereby increasing the likelihood of confusion with the E-Z-GO Marks. See Exhibit 9, attached hereto.

45. On October 2, 2026, Textron hand delivered a cease-and-desist letter to Defendant at the Golf Carting Expo demanding, among other things, that Defendant: (a) remove all goods and materials displaying the Infringing Mark from the Golf Carting Expo floor by 10:00 a.m. on October 3, 2026; (b) permanently cease all use of the Infringing Mark; (c) instruct its dealers to cease using the Infringing Mark; (d) refrain from filing any trademark applications for the Infringing Mark; and (e) provide an accounting of all inventory bearing the Infringing Mark. The letter expressly warned that continued use after receipt would constitute willful infringement. See Exhibit 10, attached hereto.

46. Defendant failed to comply with the demands set forth in the cease-and-desist letter and has continued to use the Infringing Mark in commerce, including returning to the Golf Carting Expo on October 3, 2026, despite Textron's clear warning that doing so would cause consumer confusion and directly harm Textron.

47. Defendant's adoption and continued use of the Infringing Mark is willful.

48. Defendant received actual notice of Plaintiffs' rights and demands via the cease-and-desist letter of October 2, 2026, and is charged with constructive notice of Plaintiffs' federal

registrations under 15 U.S.C. § 1072. Defendant's continued use in the face of this knowledge constitutes willful infringement.

49. On its website, Defendant advertises that its golf carts can reach speeds up to 27 miles per hour ("False Advertising Statement"). See Exhibit 11, attached hereto. Federal law, however, limits low-speed vehicles to a maximum speed of 25 miles per hour. See 49 C.F.R. §571.500(a).

50. Upon information and belief, Defendant's False Advertising Statement is literally false, material to consumers, and likely to influence purchasing decisions.

**C. Harm to Textron**

51. Defendant's unauthorized use of the Infringing Mark is causing and will continue to cause a likelihood of confusion, mistake, and deception among the relevant consuming public as to the source, origin, sponsorship, endorsement, or affiliation of Defendant's goods and services.

52. Defendant's infringement has caused and will continue to cause irreparable harm to Plaintiffs, including loss of goodwill, loss of control over the quality of goods sold under marks confusingly similar to the E-Z-GO Marks, diversion of sales, and damage to Plaintiffs' reputation.

53. Defendant's false and misleading representations, specifically the False Advertising Statement, are likely to cause actual economic injury to Plaintiffs, including the loss of sales, consumers, and market share, by influencing consumer's purchasing decisions through false statements regarding the nature, characteristics, qualities, and performance of Defendant's goods.

**COUNT I – Federal Trademark Infringement**
**15 U.S.C. § 1114**

54. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff TII is the owner of the E-Z-GO Marks, including U.S. Registration Nos. 1,299,452; 2,706,193; 3,605,315; and 4,798,279, which are incontestable and constitute prima facie evidence of validity, ownership, and exclusive right to use the marks in commerce. 15 U.S.C. §§ 1057(b), 1115(a).

56. Plaintiff E-Z-GO is TII's exclusive licensee of the E-Z-GO Marks and holds substantial rights in them under such license.

57. Defendant, without the consent or authorization of Plaintiffs, has used and continues to use in interstate commerce the Infringing Mark, which is a colorable imitation of Plaintiffs' registered E-Z-GO Marks, in connection with the sale, offering for sale, distribution, and advertising of electric golf cars, LSVs, UTVs, PTVs, and related goods and services, the same goods covered by Plaintiffs' registrations.

58. The dominant "EZ" element of the Infringing Mark is identical in appearance, sound, and connotation to the dominant "E-Z" and "EZ" element of Textron's E-Z-GO Marks.

59. Defendant's use of the Infringing Mark is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source, origin, sponsorship, endorsement, or affiliation of Defendant's goods.

60. Defendant's infringement is willful. Defendant received actual notice of Plaintiffs' rights via the cease-and-desist letter of October 2, 2026, and is charged with constructive notice of Plaintiffs' federal registrations under 15 U.S.C. § 1072. Moreover, Defendant's owner stated to Plaintiff that he intentionally selected the Infringing Mark to populate in web searches when consumers are searching for Textron's E-Z-GO products.

61. Upon information and belief, Defendant had actual knowledge of Plaintiffs' E-Z-GO Marks at the time that Defendant adopted the Infringing Mark.

62. Defendant's actions, as described above, have caused and will continue to cause irreparable harm to Plaintiffs.

63. Because of Defendant's infringement, Plaintiffs have suffered and will continue to suffer damages and irreparable harm for which there is no adequate remedy at law. Plaintiffs are therefore entitled to: (a) preliminary and permanent injunctive relief under 15 U.S.C. § 1116; (b) their actual damages, Defendant's profits, and the costs of the action under 15 U.S.C. § 1117(a); (c) an award of up to three times actual damages, as the Court finds just under 15 U.S.C. § 1117(a); (d) reasonable attorneys' fees under 15 U.S.C. § 1117(a), because Defendant's willful conduct makes this an exceptional case; and (e) destruction of infringing articles under 15 U.S.C. § 1118.

**<u>COUNT II – Federal False Designation of Origin, Passing Off, and Unfair Competition</u>**
**15 U.S.C. § 1125(a)(1)(A)**

64. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 63 as though fully set forth herein.

65. Defendant has used and continues to use the Infringing Mark in interstate commerce in a manner that constitutes a false designation of origin and is likely to cause confusion, mistake, and deception as to the source, origin, sponsorship, endorsement, or affiliation of Defendant's goods with Plaintiffs.

66. Defendant's conduct directly injures Plaintiffs' commercial interests. Defendant's use of the Infringing Mark at the Golf Carting Expo, directly next to E-Z-GO's booth, online, and in its dealers' advertising diverts sales from E-Z-GO and its authorized dealers. It also harms the reputation and goodwill tied to the E-Z-GO Marks and impairs Plaintiffs' ability to control the quality of goods associated with those marks.

67. Defendant's conduct is willful. Defendant received actual notice of Plaintiffs' rights via the cease-and-desist letter of October 2, 2026, and is charged with constructive notice of Plaintiffs' federal registrations under 15 U.S.C. § 1072.

68. Defendant's actions, as described above, have caused and will continue to cause irreparable harm to Plaintiffs.

69. Because of Defendant's false, Plaintiffs have suffered and will continue to suffer damages and irreparable harm for which there is no adequate remedy at law. Plaintiffs are therefore entitled to: (a) preliminary and permanent injunctive relief under 15 U.S.C. § 1116; (b) their actual damages, Defendant's profits, and the costs of the action under 15 U.S.C. § 1117(a); (c) an award of up to three times actual damages, as the Court finds just under 15 U.S.C. § 1117(a); (d) reasonable attorneys' fees under 15 U.S.C. § 1117(a), because Defendant's willful conduct makes this an exceptional case; and (e) destruction of infringing articles under 15 U.S.C. § 1118.

**COUNT III- Federal False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

70. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 69 as though fully set forth herein.

71. Defendant has made a factual claim on its website regarding the maximum speed of its low-speed vehicles, specifically the False Advertising Statement, that is, upon information and belief, literally false.

72. The False Advertising Statement has deceived or has the tendency to deceive a substantial portion of the audience into believing that its low-speed vehicles have a higher maximum speed than its competitors, including Plaintiffs.

73. Defendant's False Advertising Statement is material and likely to influence consumer's purchasing decisions by creating the misleading impression that Defendant's products offer superior speed and performance compared to Plaintiffs' low-speed vehicles.

74. Defendant's false and misleading representations are likely to cause actual economic injury to Plaintiffs, including the loss of sales, consumers, and market share, by influencing consumer's purchasing decisions through false statements regarding the nature, characteristics, qualities, and performance of Defendant's goods.

75. As a direct and proximate result of Defendant's conduct, Plaintiffs are entitled to injunctive relief, Defendant's profits, actual damages, and costs, up to three (3) times the amount found plus attorneys' fees, as set forth in 15 U.S.C. §§ 1116 and 1117, subject to the discretion of this Court.

**COUNT IV – Federal Trademark Dilution**
**15 U.S.C. § 1125(c)**

76. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 75 as though fully set forth herein.

77. The E-Z-GO Marks are famous within the meaning of 15 U.S.C. § 1125(c)(2). E-Z-GO and its predecessors have used the E-Z-GO Marks continuously and extensively in interstate commerce since 1954, a period of more than seventy years. The marks have been the subject of substantial, continuous nationwide advertising through print and digital media. E-Z-GO products are sold and serviced through an extensive network of authorized dealers throughout the United States. E-Z-GO has exhibited prominently at national and regional trade shows, including the Golf Carting Expo. The E-Z-GO Marks are widely recognized by the general consuming public of the United States as a designation of source of E-Z-GO's goods.

78. Defendant commenced use of the Infringing Mark in commerce after the E-Z-GO Marks became famous.

79. Upon information and belief, Defendant adopted the Infringing Mark to intentionally trade off of the fame of the E-Z-GO Marks. Indeed, Defendant's owner stated to Plaintiff that he intentionally selected the Infringing Mark to populate in web searches when consumers are searching for Textron's E-Z-GO products.

80. The dominant "EZ" element of the Infringing Mark is identical in sound and appearance to the dominant "E-Z" element of the E-Z-GO Marks, giving rise to an immediate mental association between the marks. This association is likely to impair the distinctiveness of the E-Z-GO Marks by eroding the public's exclusive mental association between the E-Z-GO Marks and Plaintiffs' goods.

81. Defendant's dilution, due to the conduct described above, is willful.

82. Defendant's actions have caused and will continue to cause irreparable harm to Plaintiffs.

83. As a direct and proximate result of Defendant's conduct, Plaintiffs are entitled to injunctive relief, Defendant's profits, actual damages, and costs, up to three (3) times the amount found plus attorneys' fees, as set forth in 15 U.S.C. §§ 1116 and 1117, subject to the discretion of this Court.

## **COUNT V – South Carolina Common Law Trademark Infringement**

84. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 83 as though fully set forth herein.

85. Plaintiffs own valid and protectable common law rights in the E-Z-GO Marks by virtue of their prior, continuous, and exclusive use in commerce in connection with golf cars, LSVs, UTVs, and PTVs.

86. Defendant's unauthorized use of the Infringing Mark in commerce in connection with identical goods is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's goods.

87. Defendant's common law infringement is willful, as set forth above.

88. Defendant's actions have caused and will continue to cause irreparable harm to Plaintiffs.

89. As a direct and proximate result of Defendant's common law trademark infringement, Plaintiffs are entitled to injunctive relief, compensatory damages, Defendant's profits, and all other available relief.

**COUNT VI- South Carolina Unfair Trade Practices Act**
***S.C. Code Ann. § 39-5-10 et seq.***

90. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 89 as though fully set forth herein.

91. Defendant's unauthorized use of the Infringing Mark in connection with the sale and marketing of goods identical to those sold by Plaintiffs under the E-Z-GO Marks constitutes an unfair and deceptive act in the conduct of trade or commerce. Defendant's conduct is designed to and does mislead consumers into believing that Defendant's goods are manufactured by, sponsored by, endorsed by, or affiliated with Plaintiffs.

92. Defendant's conduct adversely affects the public interest. Defendant is engaged in an ongoing pattern of deceptive marketing through its website (www.ezkruiser.com), authorized

and independent dealers, social media, and trade shows, affecting consumers throughout the United States.

93. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs have suffered ascertainable losses of money and property, including but not limited to lost sales, loss of goodwill, loss of control over the quality of goods sold under confusingly similar marks, and expenditures to combat consumer confusion.

94. Defendant's violations are willful and knowing, as evidenced by Defendant's continued use after receipt of the cease-and-desist letter. Moreover, Defendant's owner stated to Plaintiff that he intentionally selected the Infringing Mark to populate in web searches when consumers are searching for Textron's E-Z-GO products.

95. As a direct and proximate result of Defendant's willful violations, Plaintiffs are entitled to actual damages, treble damages under S.C. Code Ann. § 39-5-140(a), reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Textron Inc., Textron Innovations Inc., and Textron E-Z-GO LLC respectfully pray that this Court enter judgment in their favor and against Defendant Legacy EV LLC d/b/a EZ Kruiser, and grant the following relief:

A. Judgment in favor of Plaintiffs and against Defendant on all Counts of this Complaint;

B. An order under 15 U.S.C. § 1116 and/or other applicable law preliminarily and permanently enjoining Defendant, its officers, directors, agents, employees, representatives, successors, assigns, and all persons acting in concert or participation with Defendant, from:

1) using EZ, EZ KRUISER, EZ-KRUISER, or any other mark, name, designation, or domain name containing "EZ", "E-Z" or that is otherwise confusingly similar to any of the E-Z-GO Marks, in connection with the manufacture, marketing, promotion, distribution, offering for sale, or sale of golf cars, LSVs, UTVs, PTVs, parts, accessories, or related services;

2) displaying the Infringing Mark on vehicles, packaging, labels, signs, print or electronic documents, business cards, invoices, websites (including www.ezkruiser.com), social media accounts, search-engine keywords, metatags, metadata, dealer materials, trade-show displays, or any other materials;

3) otherwise infringing, diluting, or unfairly competing with any of the E-Z-GO Marks;

C. An order under 15 U.S.C. § 1116 and/or other applicable law preliminarily and permanently directing Defendant, including its officers, agents, servants, employees, attorneys, successors, assigns and all those in privity or acting in concert or participation with Defendant, to perform the following remedial measures:

1) Remove from any and all websites, retail platforms, social media, or advertising or marketing materials all uses of the Infringing Mark, and the False Advertising Statement including as described in the Complaint;

2) instruct all of its authorized and independent dealers, distributors, and agents to immediately cease all use of the Infringing Mark and the False

Advertising Statement in connection with the advertising, promotion, offering for sale, or sale of any goods or services;

3) under 15 U.S.C. § 1118 and/or other applicable law, destroy all physical advertisements, signage, packaging, labels, stickers, promotional materials bearing the Infringing Mark, and certifying to Plaintiffs that such destruction has occurred, including the manner of their destruction; and

4) within thirty (30) days, provide to Plaintiffs a sworn statement as to how it has complied with the Court's orders;

D. An award of Defendant's profits attributable to its unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

E. An award of actual damages sustained by Plaintiffs as a result of Defendant's unlawful conduct;

F. Because of the deliberate and willful actions of Defendant, a finding that this is an exceptional case, thereby entitling Plaintiffs to an award of:

1) enhanced and/or treble damages pursuant to 15 U.S.C. § 1117(a) and/or other applicable law; and

2) reasonable attorneys' fees under 15 U.S.C. § 1117(a) and/or other applicable law;

G. An award of Plaintiffs' costs of suit;

H. An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

I. That Plaintiffs be awarded judgment for damages resulting from Defendant's common law trademark infringement;

J. That Plaintiffs be awarded judgment for damages as a result of Defendant's unfair and deceptive trade practices and that those damages be trebled pursuant to S.C. Code Ann. § 39-5-140 and that Plaintiffs be awarded their reasonable attorneys' fees pursuant to S.C. Code Ann. § 39-5-140; and

K. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned counsel, hereby demand a trial by jury on all issues so triable.

## RESERVATION OF RIGHTS

Plaintiffs reserve the right, upon further investigation and discovery, to assert such claims against Defendant and other responsible parties as may be just and appropriate under the circumstances.

Dated this the 6th day of October, 2026.

Respectfully submitted,

*/s/ Samuel Alexander Long, Jr.*
Samuel Alexander Long, Jr.
(S.C. Fed. Court ID #13446)
Christina Davidson Trimmer
*pro hac vice application forthcoming*
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: along@shumaker.com
ctrimmer@shumaker.com

*Attorneys for Plaintiffs Textron Inc., Textron Innovations, Inc. and Textron E-Z-GO LLC*